UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHERRY BECKER,

    Plaintiff,

    v.                                        Case No. 08-C-0307

GMAC MORTGAGE, LLC, f/k/a GMAC
MORTGAGE CORPORATION,
UNKNOWN NOTE HOLDER,
FEDERAL INSURANCE CORPORATION AS
RECEIVER OF FIRST NATIONAL
BANK OF NEVADA (f/k/a FIRST NATIONAL
BANK OF ARIZONA),
DAVID REHBERG,
FIRST MORTGAGE LLC, AND
TED WILLET,

    Defendants.

## DECISION AND ORDER ON THE DEFENDANTS' MOTIONS
## FOR SUMMARY JUDGMENT

The plaintiff, Sherry Becker, initially filed this action on April 11, 2008. On October 16, 2008, she filed an amended complaint, alleging a violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, and Federal Reserve Board Regulation Z, 12 C.F.R. part 226. Specifically, the plaintiff seeks rescission of her home mortgage loan and recovery of damages from defendants First National Bank of Arizona (FNBAZ), GMAC Mortgage LLC (GMAC) and Unknown Note Holder for their alleged failure to meet TILA disclosure requirements. (Amended Complaint, Count 1).

The plaintiff also asserts state law claims in her amended complaint against defendant First Mortgage LLC, (First Mortgage) and defendants David Rehberg and Ted Willett (First Mortgage defendants) for false advertising in violation of Wis Stats. §§100.18

(Count 2); fraud and false representation concerning her mortgage loan (Count 3); and breach of fiduciary duty. (Count 4). In addition, she seeks damages pursuant to Wis. Stat § 224.71 et seq. against the First Mortgage defendants. (Count 7). The plaintiff asserts a claim of fraud in the inducement against defendants First National Bank of Arizona as original lender and GMAC Mortgage and Unknown Note Holder as its successors or assigns. (Count 5). She also seeks recoupment against GMAC Mortgage and the Unknown Note Holder. (Count 6).

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 3 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

On May 22, 2009, defendant GMAC Mortgage LLC filed a motion for summary judgment. (Docket #46). On August 13, 2009, the plaintiff filed a cross motion for summary judgment. (Docket #65). On September 3, 2009, defendant First National Bank of Arizona and defendants First Mortgage, David Rehberg and Ted Willett filed motions for summary judgment[1]. (Docket ## 76 and 81, respectively). These motions are ready for resolution and will be addressed herein.

---

[1] Defendant First National Bank of Arizona filed Cross-Claims against First Mortgage LLC, for breach of contract and indemnification on June 23, 2008. (Docket # 5). No motions were filed regarding these cross claims and the parties' briefs did not address them. Because of the court's determination of the motions for summary judgment, it is unnecessary to address the cross-claims.

## **MOTIONS FOR SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 248; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp.,

477 U.S. at 322 (emphasis added). Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F. 2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56 [e]).

## **Relevant Undisputed Facts**[2]

Plaintiff Sherry Becker owns and resided at a home at 5560 Hwy. 60, Grafton, Wisconsin in 2006. At that time, she also owned one rental property in addition to her own residence. She is a former real estate agent who decided to start a business called Renovation Revelation, LLC in the winter of 2006. The business involved buying properties, renovating them and then reselling them.

The plaintiff wanted to refinance her home so that she could pull equity out of her primary residence to pay off some of her outstanding debt and purchase additional investment properties. She thought this was necessary because, by refinancing her home, she could decrease her debt ratio to a level that would result in qualification for an investment property loan. The plaintiff worked with defendants David Rehberg and Ted Willett who were employees of First Mortgage.

On or about September 14, 2006, the plaintiff attended a seminar sponsored by First Mortgage at the US Bank building in Brown Deer, Wisconsin. Different types of loans were discussed at the seminar. The plaintiff could not recall any specific discussions she had with defendants Rehberg and Willett at or before the September seminar.

---

[2] As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

Following the September 14, 2006, seminar, the plaintiff met with defendant Willett at First Mortgage on September 25, 2006. First Mortgage supplied the plaintiff with a number of disclosures about the loan she was contemplating, as well as the broker-borrower relationship they had established. These disclosures, all of which the plaintiff signed on September 25, 2006, included the following:

(1) <u>Mortgage Loan Origination Agreement</u>: The agreement between the plaintiff and First Mortgage advised the plaintiff that First Mortgage is "acting as an independent contractor and not as [the plaintiff's] agent." The agreement further advised that First Mortgage may be compensated for its services by either the plaintiff or the lender which funds her loan. (Declaration of Bill Haughton [Haughton Decl.] ¶ 6, Exh. A).

(2) <u>Mortgage Broker Business Contract</u>: The contract advised the plaintiff of the mortgage broker fee, including the fact that First Mortgage "will receive compensation from the lender in the range of 1.000% to 3.000% of the loan amount." (Haughton Decl. ¶ 7, Exh. B).

(3) <u>Standards and Disclosures</u>: Sets forth various terms upon which First Mortgage would seek a loan for the plaintiff and describes the relationship with First Mortgage. The form provides that, in the event of any litigation arising out of the agreement, First Mortgage is entitled to all costs incurred in the litigation, including attorney's fees. (Haughton Decl. ¶ 8, Exh. C).

(4) <u>Good Faith Estimate of Settlement Costs</u>.

(5) <u>Truth in Lending Disclosure</u>.

(Declaration of Michael Ganzer [Ganzer Decl.], Deposition of Sherry Becker, Vol. II [Plaintiff's Dep. II] at 174-90, Exhs. 7, 8, 9, 10 and 11).

The plaintiff had questions at the closing. At all times relevant, the plaintiff knew that her interest rate was "1.49 percent" for one year and that after that one year "it's going to start going up." (Plaintiff's Dep. II at 213.) She knew she was entering into an adjustable or variable rate mortgage and that the rates and minimum monthly payments could change based upon market conditions. The plaintiff was informed on September 25, 2006, that the

compensation for First Mortgage was to be paid by the lender, that is, the company making the loan, except for a $300.00 application fee and various processing fees. The prepayment penalty was discussed with her at that time. She went forward with the closing knowing that there was a three-year prepayment penalty. (Plaintiff's Dep. II at 216-17).

At the closing on October 20, 2006, the plaintiff received and signed numerous additional disclosures that set forth the terms of her loan and the charges she would incur as a result of her decision to refinance. These disclosures were set forth in numerous documents, including the following:

(1) <u>Adjustable Rate Note and Addendum</u>: Set forth the terms of the plaintiff's loan, including the interest rate, dates that the interest rate may change and the calculation used to determine the interest rate changes. The Addendum stated that there was a prepayment penalty for the first thirty-six months of the loan.

(2) <u>Mortgage</u>: The instrument that secures the plaintiff's Adjustable Rate Note.

(3) <u>The HUD Settlement Statement</u>: Itemized all of the settlement charges the plaintiff incurred and the payouts made at closing.

(4) <u>Truth-in-Lending Disclosures Statement</u>: Identified the Annual Percentage Rate (APR) for the loan, the number of payments the plaintiff obligated herself to make over the life of the loan, the amount of each payment, the principal amount financed, the finance charge, and the fact that the loan was subject to a variable interest rate.

(5) <u>Notice of Right to Cancel</u>: Advised the plaintiff that she had three business days to rescind the loan.

(6) <u>Prepayment Penalty Option Disclosure</u>: Stated that the plaintiff understood her loan had a prepayment penalty for the first 36 months and that she could have, but did not choose, a loan with no such penalty.

(7) <u>Adjustable Rate Mortgage Loan Program Disclosure Monthly Treasury Average Index-Payment Caps All States Except New York form</u>: Described the adjustable rate mortgage (ARM) program.

(Haughton Decl. ¶¶ 9-15, Exs. D-J).

The funds to be disbursed were held for three days after closing to allow the plaintiff her right to cancel the transaction. The plaintiff did not cancel the transaction. No one from defendant FNBAZ or the Federal Deposit Insurance Corporation (FDIC) made any misrepresentations to the plaintiff.

The plaintiff acknowledged that she did not read the disclosures she had received and signed at the October 10, 2006, closing. Instead, she relied upon alleged statements by First Mortgage representatives about the terms of the loan. It was not until March or April of 2007, five to six months after the closing when the plaintiff had made several loan payments, including payments at the increased variable rate, that she first looked at her account statements and realized the terms of her loan were not as she assumed.

Approximately one month after the plaintiff signed these disclosures, First Mortgage was able to procure financing for the plaintiff through defendant First National Bank of Arizona. The total amount of the FNBAZ loan was $184,000. Of that amount, the plaintiff received $16,842.38 at closing which she put towards paying off her outstanding debts.

After refinancing her home with the loan at issue in this case, the plaintiff secured investment financing and now owns five investment properties. Two of these investment properties are refinanced annually. In total, the plaintiff has entered into seven different residential loan transactions.

Defendant GMAC Mortgage serviced the plaintiff's loan on behalf of the Residential Funding Company, LLC, which purchased defendant FNBAZ's loan after the October 2006 closing. In March 2008, the plaintiff received notice from GMAC that Aurora Loan Services, LLC (Aurora) had been assigned the right to receive payments from the plaintiff. As of April

1, 2008, servicing of the plaintiff's loan was assigned to Aurora and whatever interest GMAC previously had as a servicing agent terminated.

The plaintiff cannot tender the $16,842.38 that she received from defendant FNBAZ at the closing and is unable to repay or refinance the loan if rescission is ordered as she requests. As of the date of her first deposition, the plaintiff had approximately $50.00 in her accounts and was facing foreclosure on her residence by Aurora. She believes that no bank would lend her funds to repay the $184,000 she received from FNBAZ due to her initiation of the pending lawsuit.

The plaintiff avers that she has a learning disability, attention deficient disorder and a seizure disorder. The plaintiff never advised defendants Willett or Rehberg, or defendant First Mortgage that she had learning disabilities, attention deficit disorder, or anything like that. The plaintiff stopped making her minimum monthly mortgage payments upon the advice of counsel. In December of 2006, she lost her job.

## **ANALYSIS**

### **Truth-in-Lending Act Claim**

The plaintiff asserts that defendants GMAC and FNBAZ violated the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, because she did not receive the Notice of Right to Cancel or the Truth in Lending Disclosure Statement prior to closing as required by TILA. The plaintiff seeks rescission and statutory damages for these alleged violations.

Defendant GMAC responds that it no longer services the loan at issue and does not have any interest in this action and, therefore, should be dismissed from the case pursuant to Federal Rule of Civil Procedure 21. In addition, defendant GMAC asserts that TILA does not

apply to the plaintiff's mortgage because the mortgage was used by the plaintiff for commercial, not personal, purposes – namely, to pay down debt so that she could secure additional financing for investment properties. Defendant GMAC also asserts that it is not liable under TILA because it was the loan servicer and was never the loan holder. Additionally, defendant GMAC maintains that the disclosures provided to the plaintiff at closing were sufficient and complied with TILA and that rescission would be futile because the plaintiff cannot repay the loan proceeds she received.

Defendant FNBAZ asserts that the plaintiff's TILA claim should be dismissed because the loan is not a consumer loan and, therefore, it is exempt from TILA protection. Defendant FNZAB further states that the plaintiff has not established a violation of TILA that would allow rescission of the loan and that, regardless, she cannot repay the loan she received.

The purpose behind the enactment of TILA was to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . .." 15 U.S.C. § 1601(a). Accordingly, TILA requires creditors to "clearly and conspicuously" disclose the borrower's rights, including the right to rescind the transaction in certain loan transactions. 15 U.S.C. §1635(a). TILA also provides debtors with a right of rescission. Rescission is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)." Andrews v. Chevy Chase Bank, 545 F.3d 570, 573 (7th Cir. 2008) (citing 15 U.S.C. §1635[a]).

Under TILA, the borrower may rescind until "midnight of the third business day" after the transaction. 15 U.S.C. § 1635(a). If the creditor does not adequately inform the borrower

of the right to rescind at or before closing, the right is extended to three days rom the time the creditor does provide the required notices and disclosures, or three years from the date of closing, whichever is sooner. 15 U.S.C. §§1635(a) and (f); Andrews, 545 F. 3d at 573.

Section 226.23(d)(1)-(4)of Title 12 of the Code of Federal Regulations (Regulation Z), a subsection of TILA's implementing regulations, and 15 U.S.C. § 1635(b) detail the method by which a borrower may exercise the right to rescind. In the event a borrower does timely elect to rescind a loan, the rescission is effective upon timely written notice to the creditor. See Hubbard v. Ameriquest Mortgage Co., 2008 WL 4449888, at *7 (N.D. Ill. Sept. 30, 2008). The creditor has an obligation, within twenty days, to "return to the [borrower] any money or property given as earnest money, downpayment, or otherwise, and . . . take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). If the creditor had delivered any property to the borrower, as is the case here, once the creditor has fulfilled its obligations, the borrower "shall tender the property to the creditor," unless it "would be impracticable or inequitable" and then the borrower "shall tender its reasonable value." Id.

Courts have long recognized that the last sentences of 15 U.S.C. 15 U.S.C. § 1635(b) and Regulation Z, 12 C.F.R. § 226.23(4) provide courts with the discretion to modify the rescission procedures when required to do so to obtain an equitable outcome. See Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1170-71 (9th Cir. 2003); AFS Financial, Inc. v. Burdette, 105 F. Supp. 2d 881 (N.D. Ill. 2000). This includes the ability to condition rescission on the borrower's return of any property received to the lender. Yamamoto, 329 F.3d at 1171; AFS Financial, 105 F. Supp. 2d at 881. Rescission includes "a right to return to the status quo that existed before the loan," putting the borrower back in the position that she occupied prior to the

loan transaction. Handy v. Anchor Mortgage Corp., 464 F.3d 760, 765-66 (7th Cir. 2006) (quoting Barrett v. JP Morgan Chase Bank, N.A., 455 F. 3d 874, 880 [6th Cir. 2006]).

The plaintiff maintains that she did not receive the required TILA disclosures, including the notice of her right to rescind, at closing. Rather, she asserts she received them a few days after the closing took place and, therefore, she contends that her right to rescind therefore is extended to three years. The plaintiff does not claim that the disclosures and notices themselves do not comply with TILA, merely that she did not receive them at closing. However, the undisputed facts show that the plaintiff received, signed, and dated all of the required disclosures, including the notice of her right to rescind, on the date of closing, October 20, 2006. (Haughton Decl. ¶ ¶ 9-15, Exs. D-J). Thus, pursuant to §§ 1635(a) of TILA, the plaintiff had until three business days following October 20, 2006, to rescind the loan. She did not do so.

Moreover, contrary to the plaintiff's interpretation, TILA addresses the possibility that a borrower may receive the required disclosures and notices some time after closing. TILA expressly provides that in such a case the borrower has three days from the time of receipt to rescind the loan – not the three years the plaintiff is claiming, which applies only in the event the borrower did not receive any disclosures at all. See 15 U.S.C. § 1635(a) and (f). Therefore, even if the plaintiff had presented facts to support her assertion that she did not receive the required materials at closing, she failed to rescind the loan within the three days following receipt.

In addition, the rescission procedures require the plaintiff to return to the lender any property she received prior to her rescission. See 15 U.S.C. § 1635(b). Although the procedures set forth in the statute require the creditor to relinquish the security interest before

the borrower must return property received, courts have discretion to modify these procedures. See 15 U.S.C. § 1635(b); see also, Yamamoto, 329 F.3d at 1170-71. This includes the ability to condition rescission on the borrower's return of property. Yamamoto, 329 F.3d at 1171.

The undisputed facts establish that the plaintiff is unable to tender the property she received, including the nearly $17,000 she received at closing. She has made no effort to obtain refinancing from another lender in order to do so and does not believe she would able to obtain refinancing at all. Therefore, even if rescission was warranted here, which it is not, it is a futile remedy because the plaintiff cannot meet her rescission obligations. Id. at 1173.

Finally, TILA provides for civil liability against any creditor or assignee of a creditor who fails to comply with its provisions. See 15 U.S.C. § 1640. However, the statute expressly notes that "a servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for the purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). A review of the undisputed facts establishes that defendant GMAC was only the loan servicer, and only for a period of approximately 17 months. Therefore, defendant GMAC does not have civil liability under TILA.

Because the undisputed facts show that the plaintiff received and signed all of the disclosures required by TILA, that plaintiff is unable to refund the loan proceeds even if rescission were ordered, and that defendant GMAC does not have liability under TILA, defendant GMAC and defendant FNBAZ's motions for summary judgment on this issue will be granted. In light of the foregoing, it is unnecessary to address defendant GMAC's argument that it should be dismissed from this action, or the joint argument of defendants GMAC and FNBAZ that the plaintiff's loan was exempt from TILA because it was a commercial loan.

## Wisconsin Deceptive Trade Practices Claim

The plaintiff asserts a violation of Section 100.18 of the Wisconsin Statutes against defendants First Mortgage, Rehberg and Willett. Specifically, the plaintiff claims that the First Mortgage defendants falsely advertised themselves as financial experts via their website and that these false claims led to the plaintiff's pecuniary loss. The plaintiff further maintains that she is entitled to recover her actual losses together with costs and reasonable attorney's fees as a result of the alleged violations. The First Mortgage defendants deny that they made any untrue, deceptive, or misleading advertising claims.

The Wisconsin Deceptive Trade Practices Act (DTPA) prohibits advertisements which contain untrue, deceptive, or misleading assertions, representations, or statements of fact. See Wis. Stat. § 100.18 (2009). The three elements to a DTPA are: (1) the defendant made a statement or representation of fact to the public with the intent to induce a sale or obligation, (2) the statement or representation was untrue, deceptive, or misleading, and (3) the plaintiff suffered a loss as a result of the untrue, deceptive, or misleading statement or representation. K& S Tool and Die Corp. v. Perfection Machine Sales, Inc., 2007 WI 70, 301 Wis. 2d 109, 732 N.W.2d 792 (2007). Statements of opinion or judgment are not actionable under the DTPA because they are not statements of fact. Butteris v. Christiansen, 223 Wis. 2d. 802, 589 N.W. 2d 456 (Wis. Ct. App. 1998). Mere advertising puffery is not actionable. Tietsworth v. Harley-Davidson, Inc., 2004 WI 32, 270 Wis. 2d 146, 677 N.W. 2d 233 (2004). The DTPA provides a private cause of action for those who suffer pecuniary loss as a result of an untrue, deceptive, or misleading statement in an advertisement. See Wis. Stat. § 100.18(11)(b)(2).

Although the plaintiff contends that the First Mortgage defendants' website led her to believe they were financial experts, the plaintiff has submitted no evidence demonstrating

either the specific claims on the website that led her to this belief, or in which ways the claims are untrue, deceptive, or misleading. General allegations without substantiating facts are not sufficient to support a claim under the DTPA. See Schwarz Pharma, Inc. v. Breckenridge Pharm., Inc., 388 F. Supp. 2d 967, 982 (W.D. Wis. 2005). Thus, the plaintiff has failed to establish any facts that would support a finding that the First Mortgage defendants have violated the DTPA. Accordingly, the First Mortgage defendants' motion for summary judgment on this issue will be granted.

## Common Law Fraud Claim

The plaintiff maintains that the First Mortgage defendants engaged in fraud by intentionally making material misrepresentations of fact concerning her mortgage loan. The plaintiff asserts that the First Mortgage defendants falsely represented to her the nature of the mortgage loan, whether there could be negative amortization on the loan and the amount of their commissions for brokering the mortgage loan. She also asserts that they failed to answer a question she asked at the closing. The First Mortgage defendants deny they made any material misrepresentations of fact and assert that the record is devoid of evidence of any such misrepresentation.

The elements of an intentional misrepresentation claim under Wisconsin law are: (1) a false representation of fact, (2) made with the intent to deceive or induce another to act upon it, and (3) actually inducing another to act upon it, resulting in harm or detriment to that person. Jersild v. Aker, 766 F. Supp. 713, 718 (E.D. Wis. 1991) (citing Green Spring Farms v. Kersten, 136 Wis. 2d 304,318 n.5, 401 N.W.2d 816 [1987] and Ollerman v. O'Rourke Co., 94 Wis. 2d 17, 25, 288 N.W.2d 95 [1980]).

Contrary to the plaintiff's claims that several facts were intentionally misrepresented to her, the undisputed facts indicate that she was presented with and signed documents that clearly set forth the nature of the mortgage loan, the possibility of negative amortization, the interest rate and payment schedule. (Haughton Decl. ¶ ¶ 9-15, Exs. D-J). She also was apprised of the amount of the broker fees the First Mortgage defendants would receive and who would pay those fees. (Haughton Decl. ¶ 7, Exh. B).

The plaintiff does not dispute that she was provided with and signed these documents, nor does she assert that the documents were unclear on these matters. In fact, the undisputed facts show that the plaintiff did not read the documents before signing them. Wisconsin law does not find fraud where one could discern the truth "by the exercise of ordinary observation." Williams v. Rank & Son Buick, Inc., 44 Wis. 2d 239, 245, 170 N.W.2d 807 (1969) (quoting Jacobsen v. Whitely, 138 Wis. 434, 436-7, 120 N.W. 285 [1909]). Reading the contract which clearly set forth the terms of the agreement before signing it is the kind of "ordinary observation" the plaintiff could have exercised to learn the full details of her loan arrangement. Williams, 44 Wis. 2d at 245.

With respect to the plaintiff's claim that the First Mortgage defendants committed fraud when they failed to answer a question of hers, her contention is without merit. An omission may be actionable as fraud in certain circumstances. Jersild, 766 F. Supp. at 718. However, the plaintiff has presented no facts to support her claim that the First Mortgage defendants did not provide an answer to her question. Therefore, the First Mortgage defendants' motion for summary judgment on this issue will be granted.

**Breach of Fiduciary Duty**

The plaintiff also asserts that the First Mortgage defendants breached a fiduciary duty to her because they allegedly held themselves out to her as trusted financial advisors and failed to fully apprise her of the nature and details of the mortgage loan. In its brief, the plaintiff asserted this claim against all defendants, although the amended complaint only asserted it against the First Mortgage defendants. Therefore, the court will focus on the plaintiff's assertions with regard to the First Mortgage defendants.

A review of the undisputed facts reveals that the plaintiff has not set forth any facts showing that a fiduciary relationship existed between her and the First Mortgage defendants. The undisputed facts show that the parties had a clear agreement that the First Mortgage defendants were acting as independent contractors and not agents. (Haughton Decl. ¶ 6, Exh. A). Moreover, the facts show that the First Mortgage defendants fully disclosed all relevant and necessary information concerning the mortgage and that the plaintiff received and signed all of these disclosures at the time of closing. Absent any facts establishing that the First Mortgage defendants owed a fiduciary duty to the plaintiff, and breached that duty, defendants First Mortgage, Rehberg, and Willett's motion for summary judgment on this issue will be granted.

**Fraud in the Inducement**

The plaintiff claims that defendants GMAC and FNBAZ are liable for fraud in the inducement. The plaintiff maintains that the First Mortgage defendants acted as agents of FNBAZ such that FNBAZ is liable for the alleged misrepresentations of the First Mortgage defendants during the brokering of the loan. The plaintiff asserts that GMAC is liable as a successor or assign of FNBAZ. Specifically, the plaintiff alleges that the terms of the loan and

the adjustable interest rate were not fully disclosed to her and that the broker fee was misrepresented. The defendants GMAC and FNBAZ deny these claims.

The facts before the court establish that the terms of the loan, the adjustable interest rate, and the broker fee were fully disclosed to the plaintiff. Moreover, the undisputed facts clearly show that no one from defendant FNBAZ made any misrepresentations to the plaintiff. Because the facts do not support a finding that FNBAZ is liable for fraud in the inducement, GMAC cannot be liable as a successor or assign. Accordingly, the defendants' motions for summary judgement on this issue will be granted.

**Recoupment**

The plaintiff's amended complaint includes a claim for recoupment against defendant GMAC. She states in the amended complaint that she is "entitled to assert as offsets to any liability she might have to any holder of the note securing the Loan all damages, costs, attorneys' fees or otherwise as she might be entitled to recover under Counts 1-5 herein." (Amended Complaint ¶ 59). It appears that the plaintiff is requesting that this court reduce her liability to the defendant GMAC by the amount of her damages. The plaintiff did not provide any legal basis for to support her claim under the facts of this case, and it is unnecessary for the court to address this issue any further.

**Damages**

The plaintiff's amended complaint includes a request for damages against First Mortgage, Rehberg and Willett, pursuant to Wis. Stat. § 224.71, et seq., which prohibits certain actions on the part of mortgage bankers, loan originators, and mortgage brokers, and provides for a private cause of action in the event a mortgage banker, broker, or loan originator engages in one of the prohibited acts.

The court has determined that the First Mortgage Defendants did not engage in false advertising, misrepresentation, or breach of fiduciary duty. Therefore, the plaintiff is not entitled to damages.

### Plaintiff's Cross-Motion for Summary Judgment

In response to defendant GMAC's motion for summary judgment, the plaintiff filed a cross motion for summary judgment on her TILA, fraud in the inducement and recoupment claims against defendant GMAC. The court has determined that the plaintiff received all necessary TILA disclosures and that GMAC is not liable under TILA. Further, the court found that because FNBAZ did not engage in fraud in the inducement, GMAC has no liability for such fraud as a successor or assign. Finally, there is no legal authority to support the plaintiff's recoupment claim. Therefore, the plaintiff's motion for summary judgment against defendant GMAC will be denied.

In sum, for the reasons stated herein the motions for summary judgment filed by defendant GMAC, defendant FNBAZ and defendants First Mortgage, Rehberg and Willet will be granted. The plaintiff's cross motion for summary judgment will be denied.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant GMAC Mortgage LLC's motion for summary judgment be and hereby is **granted**. (Docket #46 ).

**IT IS FURTHER ORDERED** that the defendant First National Bank of Arizona's motion for summary judgment be and hereby is **granted**. (Docket # 76).

**IT IS FURTHER ORDERED** that the defendants First Mortgage LLC, David Rehberg, and Ted Willet's motion for summary judgment be and hereby is **granted**. (Docket #81).

**IT IS FURTHER ORDERED** that the plaintiff's cross motion for summary judgment be and hereby is **denied**. (Docket #65 ).

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of March, 2010.

BY THE COURT:

/s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge